**EDELSBERG LAW, P.A.**
Scott Edelsberg, Esq. (CA Bar No. 330990)
20900 NE 30th Ave, Suite 417
Aventura, FL 33180
Telephone: 305-975-3320
scott@edelsberglaw.com

*Counsel for Plaintiff and Proposed Class*

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODREAKA MULKEY, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>vs.<br><br>CSAA Insurance Exchange,<br><br>*Defendant*. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**COMPLAINT FOR BREACH OF CONTRACT**<br><br>**DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT**

## CLASS ACTION COMPLAINT FOR DAMAGES

Plaintiff Rodreaka Mulkey ("Plaintiff"), individually and on behalf of all others similarly situated, files this Class Action Complaint against CSAA Insurance Exchange, ("CSAA" or "Defendant"), and in support states:

## NATURE OF THE ACTION

1. This is a class action lawsuit by Plaintiff who was the named insured under a CSAA automobile policy issued for private passenger auto physical damage, pursuant to which Defendant was required to pay the cost to repair an insured vehicle up to the "Actual Cash Value" ("ACV") of the vehicle.

2. Insureds, such as Plaintiff and the putative Class Members, pay a premium in exchange for CSAA's promise to repair any damage to an insured vehicle caused by a covered peril. However, CSAA's obligation to repair damage is not limitless; rather, it is limited (or capped) to the ACV of the insured vehicle – for example, CSAA is not obligated to spend $20,000 to repair extensive damage to a vehicle that is only worth $5,000. Under such circumstances, where the cost to repair damage exceeds the value of the vehicle (less retained value), the vehicle is considered a "total loss." If a "total loss" occurs, CSAA's contractual obligation is limited to paying the ACV of the total-loss vehicle.

3. The full value or ACV of the insured vehicle includes all sales tax imposed by the State of California.

4. Plaintiff and putative class members suffered losses to their insured vehicles, which CSAA determined to be "total losses." To put Plaintiff and putative class members back in their pre-loss positions, CSAA was obligated to pay them the full amount of ACV of their insured vehicles, including mandatory sales tax calculated on the value of the vehicle at the time of loss.

5. The ACV of insured property, including automobiles, is not based on the amount, if any, originally paid by the insured for the total-loss vehicle, nor on the amount, if any, paid by the insured to replace the total-loss vehicle. Similarly, the amount of sales tax owed is not based on the amount in sales tax, if any, originally paid by the insured for the total-loss vehicle, nor on the amount paid, if any, to replace the total-loss vehicle; instead, the amount of sales tax owed is based on the underlying adjusted vehicle value of the total loss vehicle at the time of loss. Thus, an insured is entitled to the full value of their insured vehicle even if the vehicle was a gift (and the insured incurred no out-of-pocket expenses) or whether the insured paid full price for the total-loss vehicle. It is the *value* of the vehicle that is insured—not the amount actually *paid* on that vehicle.

6. Despite CSAA's obligations to pay full ACV including sales tax, CSAA's uniform practice when settling claims for total losses for insureds who leased their insured vehicles is to only pay a fraction of the amount of sales tax that is owed.

3
**CLASS ACTION COMPLAINT**

7. This practice shortchanges insureds who have paid valuable premiums to be insured that they will be placed in their pre-loss position in the event of a total loss, and allows CSAA to unjustly profit off the backs of its insureds.

8. There is nothing in CSAA's policy that authorizes it to pay anything less than full ACV, including sales tax, for insureds who lease their vehicles ("Leased Insureds"). By failing to pay its Lease Insureds who suffer a total loss the full amount of sales tax owed, CSAA breaches its insurance policy.

9. This lawsuit is brought by the Plaintiff, individually and on behalf of all other similarly situated insureds, who suffered damages due to Defendant's practice of refusing to pay full ACV payments to first-party total-loss Leased Insureds on physical damage policies containing comprehensive and collision coverages.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (a) the Plaintiff is a member of the putative classes which consist of at least 100 members and Plaintiff and Defendant are citizens of different states; (b) the amount-in-controversy exceeds $5 million dollars exclusive of interest and costs; and (c) none of the exceptions under 1332 apply to this claim.

11. Venue is proper in this Court because a substantial portion of the acts and course of conduct give rise to the claims alleged occurred within the district and Defendant is subject to personal jurisdiction in this district.

12. At all times material hereto, Plaintiff was a citizen of the State of California and domiciled in Sacramento County, California.

## FACTUAL ALLEGATIONS

13. CSAA wrote over $3 billion in auto private passenger physical damage policies in 2018, making it one of the largest auto-insurers in the state.

14. Upon information and belief and the investigation of Plaintiff's attorneys, including total-loss rates per physical damage premiums written by Defendant (and other insurers) during the relevant time period, the amount-in-controversy easily exceeds $5 million, exclusive of interest, costs, and attorneys' fees.

15. Defendant's standardized policy language promises, upon the occurrence of a total loss to an insured vehicle, to provide payment of the ACV of the insured vehicle to the insured. Defendant's standardized policy language as to coverage for ACV of total-loss vehicles is present in every auto policy issued by Defendant in California during the relevant time period. A copy of Defendant's standard policy is included as Exhibit A (the "Policy").

16. Under Section V of the Policy, entitled "CAR DAMAGE," CSAA states that it: "will pay for loss to your insured car: (1) caused by collision (collision coverage), or (2) not caused by collision (comprehensive coverage) less any deductible." (Ex. A, p. 19).

17. "Your insured car" is defined under the Policy as "any car described in the Declarations" or any car owned by the insured. (*Id.* at p 2). The Policy specifies that

5
**CLASS ACTION COMPLAINT**

the words "own," "owned," and "ownership" specifically include "any vehicle leased to [the insured] under a contract for six months or longer." (*Id.* p. 3).

18. CSAA's liability to pay for property damages is not limitless. Rather, CSAA's liability is capped by the limit of liability, which states that CSAA's "limit of liability for loss shall not exceed: (1) the lesser of: (a) the actual cash value of the stolen or damaged property, or (b) the amount necessary to repair or replace the property with similar kind and quality." (*Id.* p. 22).

19. This is a standard limit of liability clause for automobile insurance policies, and is applied universally the same throughout the insurance industry. Under this type of limit of liability, the insurance company will pay to repair or replace parts of a damaged vehicle when the cost to repair or replace is less than the actual cash value of the vehicle (referred to as a "partial loss"). Where the cost to repair or replace the vehicle exceeds the actual cash value of the vehicle, the vehicle is considered a "total loss," and the limit of liability is the ACV of the total-loss vehicle. *See New Appleman On Insurance Law Library Edition*, Vol. 6 § 62.08(1)(c) ("Rather than pay the actual cash value, an insurer has the option of paying the amount necessary to repair the damage or replace the damaged parts with property of like kind and quality. This option is typically elected when the vehicle is not a total loss."); *Couch On Insurance* 3d, § 176:4 ("Repair and replacement options are also generally inapplicable to circumstances of total loss.") (cites omitted).

20. There is no difference, for purposes of Defendant's duty to pay ACV on a first-party total-loss claim, between a leased vehicle and an owned vehicle. *See generally id.* In fact, the Policy specifically provides just the opposite, stating clearly and unambiguously that any car leased for a period of over six months is considered an "owned" car for purposes of the Policy.

21. Clearly, then, the policy language does not further define ACV as including, for example: (1) any provision excluding sales tax or mandatory regulatory fees from ACV; (2) any provision deferring payment of the ACV sales tax for any purpose whatsoever; (3) any provision requiring an insured to obtain a replacement vehicle at all; or (4) any provision linking the amount of ACV sales tax to amounts originally paid for the total loss vehicle or amounts actually incurred in replacing the total loss vehicle. Instead, the Policy establishes ACV as a predictable amount upon which both CSAA and the insured can rely.

22. The ACV of the insured vehicle is an independent amount. The ACV is the same whether the insured paid nothing for the total loss vehicle, paid less than what the vehicle was worth, or paid more than what the vehicle was worth. The ACV is the same whether the insured replaces the vehicle with a more expensive vehicle, a less expensive vehicle, or chooses not to replace the vehicle at all.

23. The policy language applies to all covered autos irrespective of ownership interests—whether owned, financed or leased, insured autos are considered "owned" or are treated and defined identically for purposes of the policy.

24. Sales tax is a mandatory cost imposed by the State of California on every vehicle purchase and is necessarily included in the underlying value of the vehicle.

25. CSAA pays sales tax to total-loss insureds who own their insured vehicles, thus acknowledging that sales tax is included in ACV payments under California law. But for Leased Insureds, CSAA pays only a fraction of the amount of sales tax owed under its promise to pay ACV.

## **CSAA UNDERPAYS SALES TAX TO LEASED INSUREDS**

26. CSAA's uniform procedure is to use a third-party vendor, Mitchell, to determine the "base" and "adjusted" value of total loss vehicles by using the price to purchase comparable vehicles at the time of the loss. The base value takes into account depreciation (age, mileage, etc.), while the adjusted value takes into account the actual condition of the total loss vehicle relative to comparable vehicles.

27. The adjusted vehicle value is otherwise known as the "appraised" value of the vehicle, and it is the amount on which the sales tax owed is based – otherwise, it is irrelevant to this lawsuit and Plaintiffs do not challenge the determination of the adjusted vehicle value.

28. After determining the adjusted value of a vehicle, Mitchell then calculates the amount of sales tax owed on the adjusted value of the vehicle. In California, Mitchel calculates 8.5% sales tax.

29. CSAA's Policy permits deductions for depreciation and subtraction of any applicable deductible and salvage retention value from the ACV owed to insureds.

30. Under the terms of the Policy, therefore, the ACV of a vehicle is the adjusted vehicle value, plus sales tax (calculated as a percentage of the adjusted vehicle value), plus mandatory regulatory fees (title and registration fees). Thus, the amount owed to insureds who suffer a total loss is the adjusted vehicle value, plus sales tax calculated as a percentage of the adjusted vehicle value, plus mandatory regulatory fees (title and registration fees), less any applicable deductible and salvage retention value.

31. Indeed, in California, CSAA pays full sales tax—the applicable percentage of the adjusted vehicle value—as part of the ACV replacement costs if the total loss vehicle was owned or financed.

32. Such payments constitute an acknowledgement from CSAA that, in the event of a total loss, its Policy promises payment of sales tax as part of the ACV of the insured vehicle.

33. Nevertheless, in California, CSAA uniformly does not pay the full amount sales tax owed as a part of the ACV replacement costs if the total-loss vehicle was leased.

34. CSAA's Policy does not contain any provision or clause stating CSAA will pay only a prorated or partial amount of sales tax on the value of a Leased Vehicle. Instead, CSAA simply promises to pay the ACV of the insured vehicle, which includes sales tax calculated on the adjusted value of the vehicle at the time of loss.

9
**CLASS ACTION COMPLAINT**

35. CSAA's Policy does not distinguish between owned, financed, and leased vehicles; instead, it explicitly treats them the same for purposes of ACV payments. It promises to pay precisely the same amount—ACV—to every policyholder.

36. CSAA's Policy promises payment of full sales tax as part of the ACV, without taking into account, for example, what amount, if any, was previously paid for the vehicle, nor what amount, if any, is actually incurred in replacing the vehicle. In fact, if the insured received the vehicle as a gift and, therefore, paid no sales tax or regulatory fees at all, the ACV of the insured vehicle, according to the terms of the Policy, is nevertheless unaffected. If the insured does not replace the total loss vehicle at all, the ACV of the vehicle is unaffected. CSAA's Policy does not condition payment of ACV on actual replacement. *See generally* Policy.

**Plaintiff's Total-Loss Claim**

37. At all times material hereto, Plaintiff leased and insured a 2015 FORD FIESTA. VIN # 3FADP4BJXFM203905 (the "Insured Vehicle").

38. Plaintiff insured the Insured Vehicle under an insurance policy issued by Defendant. Defendant insured Plaintiff's vehicle according to its Policy at all times material hereto.

39. On or about November 22, 2016, Plaintiff was involved in an accident while operating the Insured Vehicle. As a result of the accident, Plaintiff filed a claim for property damage with Defendant, claim number 1001-78-0165.

40. Following the filing of the claim, CSAA, through its third-party vendor, Mitchell, determined the vehicle was a total loss with a base value of $11,795.58, with no applicable condition adjustment, and therefore an adjusted vehicle value of $11,795.58. (Vehicle Valuation Report, Exhibit B).

41. Mitchell included sales tax in the Vehicle Valuation Report at a rate of 8.5%. (Ex. B).

42. However, CSAA later reduced the amount of sales tax calculated on the adjusted value of the vehicle. CSAA settled Plaintiff's claim by taking the Mitchell adjusted value of $11,795.58, and added $280.50 for "local tax reimbursements," $142.00 for "DMV fee reimbursement," for a gross settlement amount of $12,218.08. CSAA then subtracted the deductible of $500 to arrive at the "total settlement offer" of $11,718.08. (*See* Total Loss Settlement Letter, included as Exhibit C).

43. The applicable sales tax based on Plaintiff's residency was 8.5%. Specifically, Plaintiff was owed sales tax in the amount of 7.25% state sales tax, plus local surtax of 1.25%, of the adjusted vehicle value of her insured vehicle. Thus, the ACV sales tax owed as a part of the ACV of the insured vehicle was $1,002.58.

44. CSAA paid Plaintiff only $280.50 for sales tax, which constituted only a portion of the sales tax owed under the Policy.

45. CSAA's underpayment of ACV sales tax constituted a breach of contract.

46. Plaintiff paid all premiums owed and otherwise satisfied all conditions precedent such that her insurance policy was in effect and operational at the time of the

accident. By paying the claim--albeit insufficiently--CSAA acknowledged that Plaintiff satisfied all conditions required under the Policy.

## **CLASS ACTION ALLEGATIONS**

47. Plaintiff bring this action seeking representation of a class pursuant to Federal Rule of Civil Procedure 23.

48. Plaintiff brings this action as class representative, individually and on behalf of all other persons or entities similarly situated, more specifically defined as follows:

> All individuals insureds under a California policy issued by CSAA Insurance Exchange with the same operative policy language covering a leased vehicle with private-passenger auto physical damage coverage with comprehensive or collision coverage, who made a first-party claim, whose claim was determined to be, and adjusted as, a total loss under comprehensive or collision coverage, and where the total-loss payment did not include the total amount of sales tax calculated as the applicable state and local percentage of the adjusted vehicle value ("ACV Sales Tax"), within four years prior to the date on which this lawsuit was filed through the date of any certification order.

49. Plaintiff's claims are typical to those of all class members because members of the class are similarly affected by Defendant's failure to pay full sales tax upon the total loss of insured vehicles. The material and relevant policy terms for each class member are substantially identical to the terms of Plaintiff's policies.

50. Plaintiff's interests are coincident with and not antagonistic to those of other class members, nor is Plaintiff subject to any unique defenses.

51. Plaintiff's claims raise questions of law and fact common to all members of the class, within the meaning of Federal Rule of Civil Procedure 23(a)(2), and they predominate over any questions affecting only individual Class Members within the meaning of Rule 23(b)(3). Common questions include, but are not limited to, the following: (a) whether, under the Defendant's standardized policy language, Plaintiff and the class members are owed full sales tax calculated on the value of the insured vehicle upon the total loss of an insured vehicle; and (b) whether Defendant has breached its insurance contracts with the Plaintiff and the class members by failing to full sales tax upon the total loss of an insured vehicle.

52. Plaintiff's claims are typical of the claims of all other members of the class because all such claims arise from the allegedly improper failure by Defendant to pay full sales tax upon the total loss of insured vehicles.

53. Plaintiff and her counsel will fairly and adequately protect and represent the interests of each member of the class.

54. Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in prosecuting and defending class actions. Plaintiff's counsel has successfully litigated other class action cases similar to that here, where insurers breached contracts with insureds by failing to include sales tax and/or total loss fees after total losses.

55. Pursuant to Rule 23(b)(3), a class action is superior to the other available methods for a fair and efficient adjudication of the controversy because, among other

reasons, it is desirable to concentrate the litigation of the Class Members' claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications. Furthermore, because the damages suffered by individual Class Members is relatively small, their interests in maintaining separate actions is questionable and the expense and burden of individual litigation makes it impracticable for Class Members to seek individual redress for the wrongs done to them. Plaintiff knows of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

56. The issues related to Plaintiff's claims do not vary from the issues relating to the claims of the other members of the classes such that a class action provides a more efficient vehicle to resolve this claim than through a myriad of separate lawsuits.

57. Although the precise number of class members is unknown to Plaintiff at this time and can only be determined through appropriate discovery, Plaintiff believes that the class of persons affected by Defendant's unlawful practice consists of thousands of individuals or the class of persons affected are otherwise so numerous that joinder of all class members is impractical. The unlawful practice alleged herein is a standardized and uniform practice, employed by Defendant pursuant to standardized insurance policy language, and results in the retention by Defendant of insurance benefits and monies properly owed to Plaintiff and the class members. Thus, numerosity as to both classes is established.

58. Fed. R. Civ. P. 23(a)(2)'s commonality requirement for the Class is satisfied for reasons articulated herein. The central issues in this litigation turn on interpretation of materially identical policy provisions; thus, this case is well-suited for class wide adjudication. Defendant and all class members are bound by the same materially identical policy terms. In addition to those reasons listed above, common questions include, but are not limited to the following: (a) whether under Defendant's standardized policy language, Plaintiff and Class Members are owed full sales tax calculated on the value of their insured vehicles at the time of loss; and (b) whether Defendant breached its insurance contracts with Plaintiff and the Class Members by failing to pay full sales tax to insureds who suffered a total loss to their leased vehicles.

59. Fed. R. Civ. P. 23(a)(3)'s typicality requirement for the Class Members is satisfied for reasons articulated herein, and particularly because Plaintiff and Class Members were injured through Defendant's uniform misconduct. Further, Plaintiff and Class Members' legal claims arise from the same core practices, namely, the failure to pay full sales tax to Leased Insureds on first-party total loss claims. Plaintiff's claims are based upon the same legal theories as those of the Class Members. Plaintiff suffered the same harm as all the other Class Members.

60. The relevant Policy provisions for each Class Member are the same. The relevant law relating to the interpretation and application of those Policy provisions for each Class Member is the same. There is the potential for inconsistent or varying adjudications concerning individual Class Members. Without a single adjudication as to

the application of relevant law to the relevant policy provisions, different courts may reach different conclusions relating to the same legal and factual issues.

61. Allowing the issues to be adjudicated in a piecemeal fashion likely would result in certain Class Members who are not parties to individual adjudications having their rights impaired or impeded without notice or adequate representation.

62. Fed. R. Civ. P. 23(b)(3)'s requirements are met for all reasons already stated herein.

63. Specifically, the previously articulated common issues of fact and law predominate over any question solely affecting individual Class Members. Further, and as stated previously, class treatment is superior to any other alternative method of adjudication because the damages suffered by individual Class Members is relatively small, their interests in maintaining separate actions is questionable and the expense and burden of individual litigation makes it impracticable for Class Members to seek individual redress for the wrongs done to them, and Plaintiff knows of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

64. Defendants' breach of Policy provisions requiring them to pay ACV on total loss claims is a continuing breach and violation of Policy terms. Injunctive relief is necessary to stop these repeated and continued violations, which are likely to continue, repeat, and cause damages to the Class in the future.

## COUNT I
## BREACH OF CONTRACT

65. Paragraphs - though 63 are hereby incorporated by reference.

66. This count is brought by Plaintiff individually and on behalf of the Class Members.

67. Plaintiff was a party to a contract, the Insurance Policy, with Defendant as described herein. *See* Exhibit A. All Class Members were parties to an insurance contract with Defendant containing materially identical terms.

68. The interpretation of Plaintiff's and all Class Members' insurance policies is governed by California law.

69. Plaintiff and all Class Members made a claim determined by Defendant to be a first-party total loss under the insurance policy and determined by Defendant to be a covered claim.

70. Defendant, by paying the total loss claim, determined that Plaintiff and each Class Member complied with the terms of their insurance contracts, and fulfilled all of their duties and conditions under their respective insurance policies for each to be paid on his or her total loss.

71. Pursuant to the aforementioned uniform contractual provisions, upon the total loss of insured vehicles, the Plaintiff and every Class Member were owed the ACV of the vehicle.

72. ACV includes the full amount of sales tax required under California law, calculated on the value of the insured vehicle at the time of the loss.

73. Defendant concedes that ACV includes full sales tax and pays its insureds who either own or finance their insured vehicles full sales tax after a total loss.

74. For insureds who lease their vehicles, like Plaintiff and all Class Members, Defendant refuses to pay full sales tax when settling total-loss claims.

75. Defendant's Policy specifically states that leased vehicles are treated as owned vehicles for purposes of the Policy.

76. By failing to pay full sales tax on ACV payouts to Leased Insureds, Defendant breached its insurance Policy with Plaintiff and every Class Member.

77. As a result of Defendant's breaches, Plaintiff and the class members are entitled to sums representing the benefits owed for the full ACV payment, including full amount of sales tax calculated on the value of the vehicle at the time of loss, as well as costs, prejudgment and postjudgment interest, injunctive relief and other relief as is appropriate.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff, individually and on behalf of the putative Class, demands relief and judgment as follows:

1. For an Order certifying this action as a Class Action on behalf of the Class described above;

2. For an award of compensatory damages for the Class in amounts owed by Defendant;

3. For all other damages according to proof;

4. For an award of attorney's fees and expenses as appropriate pursuant to applicable law;

5. For costs of suit incurred herein;

6. For pre- and post-judgment interests on any amounts awarded; and

7. For other and further forms of relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

Dated: November 18, 2020

Respectfully submitted,

By: __/s/ Scott Edelsberg__

**EDELSBERG LAW, P.A.**
Scott Edelsberg, Esq. (CA Bar No. 330990)
20900 NE 30th Ave, Suite 417
Aventura, FL 33180
Telephone: 305-975-3320
scott@edelsberglaw.com

*Counsel for Plaintiff and the Proposed Class*